UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| RSUI INDEMNITY COMPANY, ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, and HALLMARK SPECIALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>ACE PROPERTY and CASUALTY INSURANCE COMPANY,<br><br>Defendant. | § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 5:23-cv-00556 |

## PLAINTIFFS' ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

TO THE UNITED STATES DISTRICT COURT:

Plaintiffs, RSUI Indemnity Company ("RSUI"), Endurance American Specialty Insurance Company ("Endurance"), and Hallmark Specialty Insurance Company ("Hallmark) (collectively the "Excess Insurers") file this Original Complaint for Declaratory Judgment and respectfully show:

### THE PARTIES

1. Plaintiff RSUI is an insurer organized under the laws of the State of New Hampshire and having its principal place of business in Georgia. RSUI is a citizen of New Hampshire and Georgia.

2. Plaintiff Endurance is an insurer organized under the laws of the State of Delaware and having its principal place of business in New York. Endurance is a citizen of Delaware and New York.

3. Plaintiff Hallmark is an insurer organized under the laws of the State of Oklahoma and having its principal place of business in Texas.

4. Defendant ACE Property and Casualty Insurance Company ("ACE") is an insurer organized under the laws of the State of Pennsylvania and having its principal place of business in Pennsylvania.

## JURISDICTION

5. The Court has jurisdiction over this matter under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and upon complete diversity of citizenship pursuant to 28 U.S.C. § 1332. This is a civil action and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Jurisdiction is also proper because the issues presented in this suit are ripe for adjudication.

## VENUE

6. Venue is proper in the Western District of Texas, San Antonio Division under 28 U.S.C. § 1391 because the Excess Insurers issued excess liability policies to their common insured, ON3 Logistics, LLC ("ON3"), which had a principal place of business in San Antonio, Texas.

## BACKGROUND

7. The Excess Insurers, as subrogees of their mutual insured, ON3, file this breach of contract action against ACE for reimbursement of a pro rata share of the Excess Insurers' respective policy limits paid on behalf of ON3 in settlement of a tort lawsuit against ON3 styled *Todd Lopez, et al. v. ON3 Logistics, LLC, et al.*, No. D-101-CV-2019-02234, in the First Judicial District Court, County of Santa Fe, New Mexico (the "Underlying Lawsuit"). The Underlying Lawsuit involved a trucking accident occurring in the early morning hours of August 2, 2019, when an ON3 driver operating a tractor towing a tanker trailer loaded with drilling fluid collided with an auto being driven by David Oakley ("Oakley"). ON3 had picked up the tanker trailer in

Odessa, Texas under a Master Transportation Agreement ("MTA") it had with Halliburton Energy Services, Inc. ("Halliburton") pursuant to which ON3 would pick up and deliver trailers at various locations. In this instance, the tanker trailer was en route to Carlsbad, New Mexico. While the facts and circumstances surrounding the accident were disputed, the ON3 driver, Cory Starks, claims he came to a complete stop at an intersection, and after looking both ways, proceeded to initiate a left turn. Before Starks could cross both lanes, it was struck by a 2019 Subaru driven by Oakley. The impact occurred at the 4th and 5th axles, the last two axles of the tanker trailer. Unfortunately, Oakley sustained serious injuries and died after ultimately being transferred to University Medical Center in Lubbock, Texas.

8. Oakley's estate and daughter sued ON3 and its driver, Halliburton, H&K Carriers, LLC ("H&K"), Multi-Chem, Inc. ("Multi-Chem"), Global Tank Leasing, LLC ("Global Tank"), and NALCO Energy Services, Inc.

9. Multi-Chem was an affiliated company of Halliburton that executed an addendum to ON3's MTA with Halliburton to use ON3's services. H&K leased the tractor under a Lease Agreement to ON3. Global Tank leased the tanker trailer to NALCO under a Master Equipment Lease.

10. ACE was the umbrella liability insurer for NALCO which sat over a National Union Fire Insurance Company of Pittsburgh, PA ("AIG") providing the primary Business Auto Policy coverage to NALCO.

11. The Excess Insurers coverage sat over a primary Business Auto Policy issued by National Interstate Insurance Company ("National Interstate").

## UNDERLYING LAWSUIT RESOLUTION

12. The Underlying Lawsuit resolved by settlement in or around May 2022, with National Interstate paying its primary policy limit of $1 million and the Excess Insurers paying their collective limits of $4 million on behalf of ON3 and its driver, Starks. AIG resolved the claim against NALCO and possibly others, for its primary policy limit of $5 million. Prior to the mediation, however, AIG and ACE were sent tender letters for defense and indemnity on behalf of ON3, which qualified as an insured under their policies, but AIG/ACE either refused or did not respond to the tenders. Based upon the terms and provisions of the ON3 tower's coverages and the NALCO tower's coverages, the Excess Insurers paid more than their share of settlement monies on behalf of ON3 and Starks. Under the terms and provisions of the AIG Business Auto Policy and the ACE Umbrella Liability Policy, as well as the Excess Insurers' policies, ACE should have paid a pro rata share of the settlement on behalf of ON3 and Stark.

## THE NALCO TOWER OF COVERAGE

13. AIG issued Business Auto Policy No. 976-73-80 (the "AIG Policy") to Ecolab, Inc., of which NALCO is an affiliated company that is an insured under the AIG Policy. The AIG Policy affords coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." An "auto" includes a "semitrailer designed for travel on public roads." A covered "auto" is any auto, and therefore includes the tanker trailer leased by NALCO from Global Tank. The "Who Is An Insured" provision in the AIG Policy provides in relevant part:

   1. **Who Is An Insured**

      The following are "insureds":
      a.    You for any covered "auto".

      b.      Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
           (1)      The owner or anyone else from whom you hire or borrow a covered "auto".
      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

14. Under the terms of the AIG Policy, ON3 qualified as an "insured" because it was using a covered "auto"—the tanker trailer—with NALCO's permission.

15. The ACE umbrella policy provides that ACE "will pay on behalf of the 'insured' those sums in excess of the 'retained limit' that the 'insured' becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies." An insured under the ACE policy is "[a]ny person or organization, if insured under 'underlying insurance', provided that coverage provided by this policy for any such insured will be no broader than coverage provided by 'underlying insurance'." The "underlying insurance" in this instance is the AIG policy. The "retained limit" is the $5 million limit under the AIG policy. Accordingly, because ON3 is an insured under the AIG policy, it is an "insured" under the ACE umbrella policy up to its $25 million limit.

## THE ON3 TOWER OF COVERAGE

16. ON3's primary layer of coverage was provided by National Interstate Business Auto Policy No. GAL 4840001 00 in the amount of $1 million (the "National Interstate Policy"). The National Interstate Policy affords coverage for "all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." A covered "auto" is any auto. An "auto" includes a "semitrailer designed for travel on public roads." Significantly, the National Interstate Policy also provides in relevant part that "[w]hile a covered 'auto' which is a 'trailer' is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form

provides for the "trailer" is [e]xcess while it is connected to a motor vehicle [ON3 does] not own." Accordingly, while the National Interstate Policy covers the tractor that ON3 leased from H&K and the NALCO tanker trailer leased from Global Tank, the coverage provided is excess because ON3 did not own the tractor.

17. Hallmark insured ON3 under Excess Liability Policy No. 77HX195310 (the "Hallmark Policy") in the amount of $1 million.

18. Endurance insured ON3 under Commercial Excess Liability Policy No. EXT30001079500 in the amount of $2 million (the "Endurance Policy") above the Hallmark Policy.

19. RSUI insured ON3 under Commercial Excess Liability Policy No. NHA087052 in the amount of $1 million above the Endurance Policy.

## BREACH OF CONTRACT/ALLOCATION RELIEF SOUGHT

20. AIG paid its $5 million limit paid on NALCO's (and/or others') behalf. Accordingly, the only primary coverage available to ON3 was the $1 million National Interstate Policy. National Interstate paid its limit on behalf of ON3 and Starks as part of the settlement. The ACE Policy and the Excess Insurers' policies should have then funded the remainder of the settlement on behalf of ON3 on a pro-rated basis. ACE, however, breached its policy and refused to contribute to the settlement on behalf of ON3 and Starks. As contractual and equitable subrogees of ON3 under the Excess Insurers policies,[1] the Excess Insurers are therefore entitled to seek reimbursement of an allocated share of the settlement they paid on ON3's and Starks's behalf from ACE. The policies' terms allowing that reimbursement arise by virtue of the policies' "other insurance" clauses.

---

[1] Each of the ON3 policies includes a contractual subrogation provision, with the exception of the RSUI Policy which follows form to the Endurance Policy's contractual subrogation provision.

21. The ACE Policy's "other insurance" clause provides:

J. Other Insurance

If valid and collectible "other insurance" applies to damages that are also covered by this policy, this policy will apply excess of the "other insurance" and will not contribute with such "other insurance". This provision will not apply if the "other insurance" is written to be excess of this policy.

22. The Hallmark Policy's "other insurance" clause provides:

D. OTHER INSURANCE means insurance, other than UNDERLYING INSURANCE, which has been provided to the INSURED and affords coverage with respect to injury or damage to which this policy also applies.

***

J. OTHER INSURANCE

IF OTHER INSURANCE, whether collectible or not, is available to the INSURED covering a loss also covered by this policy, other than a policy that is specifically written to apply in excess of this policy, the insurance afforded by this policy shall apply in excess of and shall not contribute with such OTHER INSURANCE.

23. The Endurance Policy's "other insurance" clause provides:

E. Other Insurance

If other insurance applies to a "loss" that is also covered by this policy, this policy will apply excess of the other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy. Other insurance includes any type of self-insurance or other mechanism by which an insured arranges for funding of legal liabilities.

24. The RSUI Policy's "other insurance" clause provides:

3. Other Insurance

This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except other insurance written specifically to be excess over this insurance.

25. Each of the "other insurance" clauses quoted above are known as "excess" other insurance clauses. Because the "other insurance" clauses in the ACE Policy, the Hallmark Policy,

the Endurance Policy, and the RSUI Policy are "excess," the clauses conflict. Accordingly, the insurers are required to pay an allocated share of the settlement made on ON3's and Starks's behalf. Each insurer's allocated amount of the settlement is calculated by its pro rata share of the total limits. The total amount of limits available is $29 million (ACE's $25 million, Hallmark's $1 million, Endurance's $2 million, and RSUI's $1 million). The percentage that should have been paid and allocated to each insurer is ACE 86%, Hallmark 3.5%, Endurance 7%, and RSUI 3.5%. Accordingly, ACE owed $3,440,000 of the $4 million paid by the Excess Insurers, and the Excess Insurers seek reimbursement of that amount, plus interest as allowed by law. In addition, as subrogees seeking reimbursement for damages caused by a breach of contract, the Excess Insurers are also entitled to recover attorneys' fees and expenses incurred in this action under chapter 38 of the Texas Civil Practice and Remedies Code.

## PRAYER

THEREFORE, the Excess Insurers seek judgment against ACE for breach of contract for failing to pay its allocated share of the settlement on behalf of ON3 and Starks. The Excess Insurers further seek attorneys' fees and expenses, as well as pre- and post-judgment interest as allowed by law and all other and further relief to which they may show themselves entitled at law or in equity.

Respectfully submitted,

/s/ *J. Richard Harmon*

_____

J. Richard (Rick) Harmon
State Bar No. 09020700
Jo Allison Stasney
State Bar No. 19080280
John M. Wiggins
State Bar No. 24115950

THOMPSON, COE, COUSINS & IRONS, L.L.P.
Plaza of the Americas
700 N. Pearl Street, Twenty-Fifth Floor
Dallas, TX 75201-2832
Telephone: 214-871-8200
Telecopy: 214-871-8209
rharmon@thompsoncoe.com
jstasney@thompsoncoe.com
jwiggins@thompsoncoe.com

COUNSEL FOR RSUI INDEMNITY COMPANY, ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, and HALLMARK SPECIALTY INSURANCE COMPANY